**<u>Exhibit A</u>**

Summons and Complaint, *Zurich American Insurance Co. v. Revlon Inc.,* Index No. 655865/2026 (N.Y. Sup. Ct. N.Y. Cnty. filed Oct. 16, 2026), NYSCEF Doc. Nos. 1-2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ZURICH AMERICAN INSURANCE COMPANY and ZURICH REINSURANCE COMPANY LTD. (f/k/a ZURICH INTERNATIONAL (BERMUDA) LTD),

Plaintiffs,

v.

REVLON INC., REVLON CONSUMER PRODUCTS CORPORATION, ROUX LABORATORIES INC., and REVLON GROUP HOLDINGS LLC,

Defendants.

Index No.

**SUMMONS**

**TO THE ABOVE-NAMED DEFENDANTS**

**YOU ARE HEREBY SUMMONED** and to answer the Complaint in this action and to serve a copy of your Answer, or if the Complaint is not served with a Summons, to serve a Notice of Appearance on the plaintiff's attorneys, **within twenty (20) days** after the service of this Summons, exclusive of the day of service, or **within thirty (30) days after completion of service** where service is made in any other manner than by personal delivery within the State. In case of your failure to appear or answer, judgment may be taken against you by default for the relief demanded in the Complaint.

New York County is designated as the place of trial because the events giving rise to Plaintiffs' claims occurred and based on the residences of the parties.

Date: October 16, 2026

**WHITE AND WILLIAMS LLP**

By: /s Gabriel E. Darwick
Gabriel E. Darwick, Esq.
810 Seventh Avenue, Suite 500
New York, New York 10019
*Attorneys for Plaintiffs*
*Zurich American Insurance Company and Zurich Reinsurance Ltd.* (*f/k/a Zurich International (Bermuda) LTD*)

52962636v.1

**Defendants' Addresses**:

**Revlon Inc.**
55 Water Street, 43rd Floor
New York, NY 10041

**Revlon Consumer Products Corporation**
55 Water Street, 43rd Floor
New York, NY 10041

**Revlon Group Holdings LLC**
55 Water Street, 43rd Floor
New York, NY 10041

**Roux Laboratories, Inc.**
5344 Overmyer Drive
Jacksonville, FL 32254

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and ZURICH REINSURANCE COMPANY LTD. (f/k/a ZURICH INTERNATIONAL (BERMUDA) LTD),<br><br>Plaintiffs,<br><br>-against-<br><br>REVLON INC., REVLON CONSUMER PRODUCTS CORPORATION, ROUX LABORATORIES INC., and REVLON GROUP HOLDINGS LLC,<br><br>Defendants. | INDEX NO.<br><br>**COMPLAINT** |

Plaintiffs, Zurich American Insurance Company and Zurich Reinsurance Company Ltd. (f/k/a Zurich International (Bermuda) Ltd) (collectively "Zurich"), by way of Complaint against defendants, Revlon Inc., Revlon Consumer Products Corporation, Roux Laboratories Inc., Revlon Group Holdings, LLC, (collectively the "Revlon Defendants"), allege as follows:

## NATURE OF ACTION

1. This is an action for declaratory judgment and related relief. Zurich American Insurance Company ("ZAIC") issued nineteen consecutive annual commercial general liability policies to Revlon Inc. ("Revlon") and/or its parent company MacAndrews & Forbes, Inc. ("M&F") incepting on July 1, 2004 and expiring on July 1, 2023 ("ZAIC Policies"). Each ZAIC Policy is subject to a $100,000 deductible per occurrence.

2. Each deductible endorsement requires the insured to pay allocated loss adjustment expense ("ALAE") – which, notably, include attorney's fees and expenses – either on a pro rata basis, within the deductible amount, or outside limits.

3. Zurich Reinsurance Company Ltd. (f/k/a Zurich International (Bermuda) LTD) ("ZIB") issued quota-share excess liability policies for the periods April 1, 1983 to April 1, 1984, April 1, 1984 to April 1, 1985, and April 1, 1985 to April 1, 1986 (the "ZIB Policies").

4. The Revlon Defendants have been named as defendants in thousands of lawsuits, consolidated in a multi-district litigation, pending in the United States District Court for the Northern District of Illinois, under Case 1:23-cv-00818 ("Underlying Lawsuits"). The Underlying Lawsuits allege that the underlying plaintiffs suffered from reproductive cancers arising out of their use of hair straightening or relaxing products.

5. Disputes have now arisen between the parties as to the application of the ZAIC and ZIB Policies to the Underlying Lawsuits. Therefore, Zurich seeks, among other things, a declaration that the Revlon Defendants are responsible for defense costs within the deductibles.

## PARTIES

6. ZAIC is a New York corporation with its principal place of business in Schaumburg, Illinois.

7. ZIB is a Swiss corporation, with its principal place of business located in Switzerland.

8. Revlon is a Delaware corporation, with its principal place of business in New York, New York.

9. Revlon Consumer Products Corporation is a Delaware corporation with its principal place of business in New York, New York.

10. Roux Laboratories, Inc. ("Roux") is a Florida corporation with its principal place of business in Jacksonville, Florida.

11. Revlon Group Holdings LLC is a Delaware limited liability company with its principal place of business in New York, New York. Revlon Group Holdings, LLC was formed as the result of Revlon's recent emergence from Chapter 11 Bankruptcy.

## FACTUAL BACKGROUND

### Underlying Lawsuits

12. Revlon, Revlon Consumer Products Corporation, Roux, and Revlon Group Holdings LLC (the "Revlon Defendants") have been named as defendants in certain of the Underlying Lawsuits.

13. In the Underlying Lawsuits, plaintiffs allege exposures to hair straightening products going back decades that have led to various reproductive cancers.

### The ZAIC Policies

14. ZAIC issued nineteen consecutive annual commercial general liability policies to Revlon Inc. and/or M&F incepting on July 1, 2004 and expiring on July 1, 2023.

15. The insuring agreement of each ZAIC Policy provides, in relevant part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply […]
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.

16. To the extent there is "bodily injury" during any ZAIC Policy period, defense costs associated with the alleged bodily injury must be allocated on a pro rata basis across all policy periods in which the alleged injury occurred.

17. Each ZAIC Policy includes a Deductible Endorsement. The precise terms of these endorsements vary by year. By way of example, the 2014 ZAIC Policy includes a $100,000 per occurrence deductible and, for Allocated Loss Adjustment Expense, Option 3 is selected. Option 3 states: "[a]s respects each 'occurrence', each 'claim' or each 'accident' (as applicable), 'ALAE' is reimbursed and included in the Deductible Amount."

18. The Endorsement further states in part:

A. How This (These) Deductible(s) Apply(ies);

You agree to reimburse us for each "occurrence", each "claim" or each "accident" up to the Deductible amount shown in the Schedule above:

1. All sums payable for other than "ALAE"; plus

2. All "allocated loss adjustment expense" as respects each "occurrence", "claim" or "accident":

   a. When you have elected Option 1 in the Schedule above, in addition to and not limited by the deductible amount, or

   b. When you have elected Option 2 in the Schedule above, in addition to but not limited by the deductible amount if sums payable for other than "ALAE" are equal to or less than the deductible amount; or a prorata share of total "ALAE" if the sums payable for other than "ALAE" exceed the deductible amount, or

   c. When you have elected Option 3 in the Schedule above, as part of the deductible amount.

19. The Endorsement further provides:

Each "Occurrence" means:

For any coverage described in the Schedule to which the each "occurrence" basis applies, to all sums payable for other than "ALAE" as the result of an accident, including continuous or repeated exposure to substantially the same harmful conditions, "regardless of the number of persons or organizations who sustain damages or to whom sums are payable because of that "occurrence."

And that:

"Allocated loss adjustment expense" is an expense directly allocable to a specific

claim and shall include but not be limited to all Supplementary Payments as defined under the Policy; all court costs, fees and expenses; costs of all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigation services, non employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or loss under the Policy. "Allocated loss adjustment expense" shall not include the fees, charges or costs of a third party administrator engaged to provide claim service or related services.

20. Although the precise terms of the Deductible Endorsements vary, each endorsement includes a $100,000 deductible that applies to each "occurrence."

21. It is ZAIC's position that each plaintiff in the Underlying Lawsuits alleges at least one occurrence during each policy year in which the plaintiff was allegedly injured by the Revlon Defendants' products.

22. Defendants must therefore satisfy at least one deductible per plaintiff for each ZAIC Policy implicated by each of the Underlying Lawsuits.

23. General defense costs that cannot be specifically allocated to any one plaintiff must be allocated across all Underlying Lawsuits.

24. Each ZAIC Policy provides that "no insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

**The ZIB Policies**

25. ZIB issued quota share excess policies for the April 1, 1983 to April 1, 1984 policy period, April 1, 1984 to April 1, 1985, and April 1, 1985 to April 1, 1986 ("ZIB Policies").

26. The 1983-1984 and 1984-1985 ZIB Policies subscribe to umbrella liability policies issued on the J (A) Plus London Short Excess 1971 Umbrella Form.

27. The 1983-1984 and 1984-1985 ZIB Policies apply only to bodily injury occurring

during the policy period.

28. For the April 1, 1985 to April 1, 1986 policy period, Zurich issued three quota-share excess policies to Revlon. ("1985-1986 ZIB Policies").

29. The 1985-1986 ZIB Policies follow the terms of a Lead Umbrella Policy issued by Transportation Insurance Company ("Transportation").

30. The underlying Transportation Policies apply only to bodily injury occurring during the policy period.

31. The ZIB Policies do not cover settlements entered without ZIB's consent.

**Revlon Bankruptcy**

32. Revlon, Inc., Revlon Consumer Products Corporation and their affiliate and subsidiary companies (collectively the "Debtors") declared Chapter 11 bankruptcy on June 15, 2022. Approximately one year later, the Debtors emerged from bankruptcy.

33. Article VII.F requires the Reorganized Debtors to honor the Debtors' obligations with respect to any Hair Straightening Claims Defense Costs. Hair Straightening Claims Defense Costs are defined to mean, in part, "any expense directly allocable to any Hair Straightening Claim under any insurance policy….that a Debtor or Reorganized Debtor is required to pay directly or to reimburse an applicable insurer for pursuant to the terms of the applicable insurance policy and any agreements, documents, or instruments relating thereto…"

34. Article VII.G., titled "Special Provisions Regarding Zurich Insurance Contracts and Chubb Insurance Contracts," Paragraph 2, provides that, "except as expressly set forth in Articles VII.F and VIII.L.3 of the Plan, on and after the Effective Date, the Reorganized Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Zurich Insurance Contracts and the Chubb Insurance Contracts in accordance with the terms thereof…"

35. Paragraph 3 provides "except as expressly set forth in Articles VII.F and VIII.L.3 of the Plan, nothing alters, modifies, or otherwise amends the terms and conditions of the Zurich Insurance Contracts or the Chubb Insurance Contracts…any rights and obligations (including, without limitation, any obligations or liabilities of any of the Debtors' Affiliates) and coverage thereunder shall be determined under the Zurich Insurance Contracts and the Chubb Insurance Contracts, as applicable, and applicable non-bankruptcy law as if the Chapter 11 Cases had not occurred."

36. Under these provisions, the Revlon Defendants remain responsible for satisfying the deductibles of the ZAIC policies as they relate to ALAE and defense costs.

37. The Revlon Defendants disagree with ZAIC's position as to their obligations with respect to the Policy deductibles.

**Revlon's Settlement Negotiations**

38. Upon information and belief, Revlon is engaged in settlement discussions with the plaintiffs in the Underlying Lawsuits.

39. Zurich provided the Revlon Defendants with parameters for any settlement negotiations with the plaintiffs in the Underlying Lawsuits.

40. Other insurers have likewise provided the Revlon Defendants with parameters for settlement negotiations.

41. The Revlon Defendants, however, have described such parameters as "unreasonable" and have threatened to negotiate a settlement with the plaintiffs without Zurich's consent, and to assign their rights under the Zurich Policies to the plaintiffs.

42. Revlon has asserted that the primary basis for unilaterally negotiating a settlement with the plaintiffs in the Underlying Lawsuits is to eliminate its negotiated obligation to pay Hair

Straightening Defense Costs, as that term is defined in Revlon's Bankruptcy Plan.

43. By mandating that the Revlon Defendants pay directly or reimburse an applicable insurer for defense costs owed under the applicable policy, the Bankruptcy Plan confirmed the enforceability of the ZAIC Policies' terms and instructed Revlon comply with them.

44. Indeed, the Bankruptcy Plan explicitly recognizes that the Revlon Debtors "remain liable in full for all of their and the Debtors' obligations under the Zurich Insurance Contracts…in accordance with the terms thereof[.]"

45. While the Bankruptcy Plan imposed on Revlon an obligation to pay certain Hair Straightening Claims Defense Costs, the Bankruptcy Plan relieved Revlon of any financial exposure to a settlement or judgment.

46. Under the terms of the Plan, the Hair Straightening Claims qualify as Class 9(d) (Other General Unsecured Claims). Article III of the Plan provides that holders of Class 9(d) Claims were permitted to vote or reject the plan. If these claimants voted to accept the Plan and it was approved, they would be entitled to a pro rata share of a settlement pot. But if Class 9(d) claimants voted to reject the Plan and the Plan was approved, then the claims "shall be canceled, released, extinguished, and discharged, and of no further force or effect."

47. Class 9(d) voted to reject the Plan but it was approved. As a result, the plaintiffs in the Underlying Lawsuits are not entitled to any financial recovery from the Revlon Defendants or any distribution under the Plan. Rather, their only recourse is the Revlon Defendants' insurance proceeds. Therefore, the Revlon Defendants' threatened settlement of the Underlying Lawsuits is engineered with the intent of eliminating the Revlon Defendants' continued obligation to pay their share of Hair Straightening Claims Defense Costs—an obligation they accepted to confirm their Bankruptcy Plan.

**COUNT I**
**(DECLARATORY JUDGMENT – DUTY TO DEFEND)**

48. Zurich re-alleges and incorporates by reference paragraphs 1 through 47 above, as if fully set forth herein.

49. Disputes have arisen as to the existence and scope of Zurich's obligation to pay defense costs on behalf of the Revlon Defendants in connection with the Underlying Lawsuits.

50. Zurich seeks a declaration of the parties' respective rights and obligations under the Zurich Policies identified above in connection with the Underlying Lawsuits.

51. In particular, Zurich seeks a determination that any past or future obligation to pay defense costs on behalf of the Revlon Defendants may be limited or precluded because:

a. Zurich has no obligation to pay Hair Straightening Claims Defense Costs unless and until the deductibles in the ZAIC Policies have been satisfied by the Revlon Defendants;

b. Hair Straightening Claims Defense Costs must be allocated to each policy period triggered by an Underlying Lawsuit, including to uninsured, self-insured and/or other insured policies, as well as to periods when no insurance was issued, where the relevant insurers were insolvent, or where the insurance has been exhausted;

c. To the extent a Revlon Defendant does not qualify as an insured under a Zurich Policy, Zurich has no obligation to pay defense costs;

d. Coverage, if any, is or may be limited or barred, in whole or in part, to the extent a Revlon Defendant had no "legal obligation to pay" damages because of "bodily injury" during the "policy period";

e. Certain of the Underlying Lawsuits do not allege "bodily injury" during a Zurich policy period;

f. Legal fees that were not reasonably and necessarily incurred are not covered by some or all of the Zurich Policies;

g. Coverage, if any, is or may be limited or barred, in whole or in part, to the extent a Revlon Defendant assigned any interest in a Zurich Policy without Zurich's written consent;

h. Coverage, if any, is or may be limited or barred, in whole or in part, to the extent that a Revlon Defendant enters or entered into a settlement without Zurich's consent;

i. Coverage, if any, is or may be limited or barred, in whole or in part, to the extent a Revlon Defendant has been or is released by any settlement agreement.

52. There exists an actual and justiciable controversy between Zurich and the Revlon Defendants as to these matters, as to which Zurich has no adequate remedy at law.

53. A resolution of this dispute is necessary to resolve Zurich's obligation to pay defense costs on behalf of the Revlon Defendants.

54. Therefore, Zurich seeks a judicial determination on the parties' rights and obligations.

**COUNT II**
**(DECLARATORY JUDGMENT – DUTY TO INDEMNIFY)**

55. Zurich re-alleges and incorporates by reference paragraphs 1 through 54 above, as if fully set forth herein.

56. Disputes have arisen as to the existence and scope of Zurich's obligation to indemnify the Revlon Defendants in connection with the Underlying Lawsuits.

57. Zurich seeks a declaration of the parties' respective rights and obligations under the Zurich Policies identified above in connection with the Underlying Lawsuits.

58. In particular, Zurich seeks a determination that any past or future duty to indemnify the Revlon Defendants may be limited or precluded because:

a. To the extent the deductibles in the ZAIC Policies have not been satisfied, Zurich has no duty to indemnify;

b. To the extent there is a duty to indemnify under the Zurich Policies, indemnity payments must be allocated to each policy period triggered by an Underlying Lawsuit, including to uninsured, self-insured and/or other insured policies, as well as to periods when no insurance was issued, where the relevant insurers were insolvent, or where the insurance has been exhausted;

c. To the extent a Revlon Defendant does not qualify as an insured under a Zurich policy, Zurich has no duty to indemnify;

d. Coverage, if any, is or may be limited or barred, in whole or in part, to the extent a Revlon defendant had no "legal obligation to pay" damages because of "bodily injury" during the "policy period";

e. Certain of the Underlying Lawsuits do not allege "bodily injury" during a Zurich policy period;

f. Coverage, if any, is or may be limited or barred, in whole or in part, to the extent a Revlon defendant assigned any interest in a Zurich Policy without Zurich's written consent;

g. Coverage, if any, is or may be limited or barred, in whole or in part, to the extent that a Revlon defendant enters or entered into a settlement without Zurich's consent;

h. Coverage, if any, is or may be limited or barred, in whole or in part, to the extent a Revlon defendant has been or is released by any settlement agreement.

i. Coverage, if any, is or may be limited or barred, in whole or in part, to the extent any settlement the Revlon Defendants enter into is unreasonable, collusive, or made in bad faith.

59. There exists an actual and justiciable controversy between Zurich and the Revlon Defendants as to these matters, as to which Zurich has no adequate remedy at law.

60. A resolution of this dispute is necessary to resolve Zurich's duty to indemnify the Revlon Defendants.

61. Therefore, Zurich seeks a judicial determination that it has no duty to indemnify the Revlon Defendants, in whole or in part, in the Underlying Lawsuits.

**COUNT III**
**(EQUITABLE CONTRIBUTION)**

62. Zurich re-alleges and incorporates by reference paragraphs 1 through 61 above, as if fully set forth herein.

63. ZIB has offered to pay its pro rata share of defense costs for the Underlying Lawsuits under the 1983-1984 and 1984-1985 ZIB Policies.

64. The Revlon Defendants have rejected ZIB's payments on the erroneous premise that ZIB is required to pay defense costs under the 1983-1984 and 1984-1985 ZIB Policies on an "all sums" framework.

65. Under this "all sums" framework, the Revlon Defendants contend that ZIB must pay for defense costs incurred defending Underlying Lawsuits alleging bodily injury occurring before, during and after the 1983-1984 and 1984-1985 ZIB policy periods.

66. ZIB disagrees with the Revlon Defendants' position and has expressed that the 1983-1984 and 1984-1985 ZIB Policies are subject to pro rata allocation.

67. To the extent ZIB issues payment of defense costs under the 1983-1984 and 1984-1985 ZIB Policies on an "all sums" basis, ZIB is entitled to equitable contribution from the Revlon Defendants for costs properly allocable to policies with deductibles and retentions, i.e., that are Hair Straightening Claims Defense Costs assumed by the Revlon Defendants under the Bankruptcy Plan;

68. There exists an actual and justiciable controversy between ZIB and the Revlon Defendants as to these matters, as to which ZIB has no adequate remedy at law.

69. Accordingly, the Court should award ZIB, and order the Revlon Defendants to pay, their pro rata share of defense costs incurred by ZIB under the 1983-1984 and 1984-1985 ZIB Policies, plus statutory interest.

## PRAYER FOR RELIEF

WHEREFORE, Zurich prays for judgment as follows:

1. On the first cause of action, for a declaration concerning the parties' rights and obligations for payment of Hair Straightening Claims Defense Costs.

2. On the second cause of action, for a declaration concerning Zurich's rights and obligations with respect to its duty to indemnify the Revlon Defendants in connection with the Underlying Lawsuits.

3. On the third cause of action, for equitable contribution from the Revlon Defendants for defense costs incurred under the 1983-1984 and 1984-1985 ZIB Policies that are Hair Straightening Claims Defense Costs assumed by the Revlon Defendants.

4. Such other and further relief as the Court deems just and proper.

Date: October 16, 2026

**WHITE AND WILLIAMS LLP**

By: _/s _ Gabriel E. Darwick __
Gabriel E. Darwick, Esq.
810 Seventh Avenue, Suite 500
New York, New York 10019
*Attorneys for Plaintiffs*
*Zurich American Insurance Company and*
*Zurich Reinsurance Ltd.* (*f/k/a Zurich*
*International (Bermuda) LTD*)